**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**MELINDA ANN VERASTIQUE,**

     **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the Social Security**
**Administration,**

     **Defendant.**

**CIVIL NO. SA-15-CV-601-PM**

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge,[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  ADMINISTRATIVE PROCEEDINGS

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Plaintiff Melinda Ann Verastique initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Carolyn W. Colvin, the acting Commissioner of the Social Security

---

[1] Docket nos. 12, 15, 17.

Administration, that plaintiff is not disabled and not entitled to receive disability insurance benefits ("DIB").

Plaintiff filed an application for Title II DIB on January 15, 2014, alleging disability since November 30, 2013.[2]  On March 28, 2014, plaintiff amended the application, alleging disability since November 22, 2013.[3]  The Social Security Administration ("SSA") denied DIB initially on March 27, 2014, and upon reconsideration on May 29, 2014.[4]  On January 20, 2015, Katherine W. Brown, an administrative law judge ("ALJ"), held a hearing and considered plaintiff's claims *de novo*.[5]  Plaintiff was represented by an attorney at the hearing, and the ALJ received testimony from plaintiff as well as from vocational expert Donald Marth ("VE") and medical expert Arthur Briggs, M.D.[6]  The ALJ issued a written opinion on February 5, 2015, denying benefits and finding that plaintiff had not been disabled from November 22, 2013, through the date of the decision.[7]  Plaintiff requested Appeals Council review of the ALJ's decision, and on May 22, 2015, the Council concluded that no basis existed to grant review.[8]  Thus, the ALJ's determination became the final decision of the Commissioner.  Plaintiff now appeals that determination.

---

[2]  Transcript ("TR") at 170-175.

[3]  Id. at 174.

[4]  Id. at 98-101, 107-109.

[5]  Id. at 32-74.

[6]  Id. at 64-72.

[7]  Id. at 15-24.

[8]  Id. at 1-5.

### III.  ISSUES

1.      Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

2.      Whether the decision comports with relevant legal standards.

### IV.  STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[9]  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[10]  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[11]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[12]  "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[13]  Conflicts in the evidence are for the Commissioner to resolve.[14]

---

[9]  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

[10]  Id.

[11]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

[12]  Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

[13]  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

[14]  Id.

Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[15]

## V.  ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

**A.     Summary of the ALJ's Decision**

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i) and 223(d) of the Social Security Act.[16]  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that could be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.[17]  The ALJ noted there was an additional issue with respect to plaintiff's claim for a period of disability—whether the insured status requirements of sections 216(i) and 223 were met.[18]  The ALJ found plaintiff's earnings record showed plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2017.[19]  Thus, according to the ALJ, plaintiff needed to establish disability on or before that date to be entitled to a period of disability and

---

[15]  Martinez, 64 F.3d at 174.

[16]  TR at 15.

[17]  Id.

[18]  Id.

[19]  Id.

DIB.[20]

The ALJ next explained the five-step sequential evaluation process for determining whether an individual is disabled, and noted that the steps are to be followed in order.[21]  The ALJ then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made findings of facts and conclusions of law.[22]

**Step 1 findings**.  The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 22, 2013.[23]

**Step 2 findings.**  The ALJ found plaintiff had the severe impairments of spinal stenosis/scoliosis, sciatic nerve damage, herniated discs, carpal tunnel syndrome, and obesity.[24] The ALJ noted "claimant has a hiatal hernia and gastroesophageal reflux disease or GERD," but "the symptoms of this condition have resolved with medication therapy following surgical intervention, and "these impairments were not severe for any period of 12 continuous months after the alleged onset date."[25]   The ALJ considered claimant's migraine headaches, and noted "the record does not document these to be of an intensity or a frequency to be severe within the

---

[20]  Id.

[21]   Id. at 15-17 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a)-(g), 404.1521, 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1565, 404.1572(a) and (b), 404.1574, 404.1575 and Social Security Rulings ("SSR") 85-28, 96-3p, 96-4p, 96-8p).

[22]  Id. at 17-24.

[23]  Id. at 17 (citing 20 C.F.R. § 404.1571, *et seq*.).

[24]  Id. (citing 20 C.F.R. § 404.1520(c)).

[25]  Id. (citing 3F25, 422; Ex. 5F23; Ex. 7F214, 220).

meaning of regulations."[26]  The ALJ noted claimant's migraine headaches "have long been rendered quiescent and amenable to medical management" and claimant does "not appear to have required medications typically prescribed to prevent or halt migraines since the onset date."[27] The ALJ considered claimant's contention "she is limited by a vitamin D deficiency," and found it was being addressed "by supplementation," and that "it is not severe."[28]  The ALJ also noted "claimant's anxiety disorder is not severe."[29]  In reaching this conclusion, the ALJ considered that claimant "does not take any prescription medication for anxiety," and "talks with a counselor."[30]  Further, the ALJ noted the "Department of Veterans Affairs (VA) records reveal her mental status examination is normal," and "her daily activities remain intact."[31]

The ALJ noted claimant described in her Function Report "cooking three times a day, caring for her pets, handling her hygiene and grooming," and cleaning.[32]  Claimant also reports visiting friends, driving, walking, shopping, swimming, and "trying to maintain regular attendance at church."[33]  The ALJ also considered notes of a March 10, 2014 consultative examination showing claimant "is able to do her own bathing, grooming, cooking, and

---

[26]  Id.

[27]  Id. (citing Ex. 3F84; Ex. 5F60).

[28]  Id. at 18 (citing Ex. 8F154).

[29]  Id.

[30]  Id.

[31]  Id. (citing Ex. 3F65).

[32]  Id. (citing Ex. 3E).

[33]  Id.

cleaning."[34]  The ALJ noted claimant is also able to "manage her finances, drive herself," "do her own shopping," and help her boyfriend, "a mechanic by trade, with tools."[35]  The ALJ also noted claimant's social functioning, mood, affect, memory and concentration were all normal.[36]  Claimant was assessed with a global assessment of functioning (GAF) score of 70[37] and "has never required inpatient psychiatric treatment."[38]

Based on the medical record, the ALJ found claimant has the following "paragraph B" limitations under section 12.06: (1) "no restriction of activities of daily living;" (2) "mild difficulties maintaining social functioning;" (3) "no difficulties maintaining concentration, persistence or pace;" and (4) "no episodes of decompensation, each of extended duration."[39]  The ALJ noted claimant "has no severe mental impairment."[40]

**Step 3 findings**.  The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."[41]  The ALJ expressly considered listings section 1.04A, stating "the record does not document that the claimant has

---

[34]  Id.

[35]  Id.

[36]  Id.

[37]  Id. (citing Ex. 4F4).

[38]  Id. (citing Ex. 4F3).

[39]  Id.

[40]  Id. (citing 20 C.F.R. 404.1520a).

[41]  Id.

motor and sensory or reflex functioning deficits and positive straight leg raising testing, both sitting and supine, in connection with her lumbar spine degenerative disc disease" and section 11.14, stating "the record does not document that the claimant has significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements or gait and station."[42]

**Residual functional capacity finding.**  Having determined that plaintiff suffered from severe impairments that did not meet or equal a listed impairment, and before considering step 4, the ALJ proceeded to assess plaintiff's RFC.[43]  The ALJ stated that she had considered all of plaintiff's symptoms and the extent to which her symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p."[44]  The ALJ confirmed that she had considered the opinion evidence, as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.[45]  The ALJ also indicated that she had used the two-step process applicable to RFC determinations.[46]  Under that process, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."[47]  Second, the ALJ "must evaluate

---

[42] Id. at 18-19.

[43] Id. at 19-23.

[44] Id. at 19.

[45] Id.

[46] Id.

[47] Id.

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning."[48]   The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the statements based on a consideration of the entire case record."[49]

The ALJ assessed plaintiff with the following RFC:

[C]laimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except lifting up to 20 pounds occasionally and lifting and carrying 10 pounds frequently, standing/walking 6 hours of an 8-hour day, and sitting 6 hours of an 8-hour day provided she can alternate positions between sitting and standing at ½ hour to 1 hour intervals during the workday.  She can frequently climb ramps, stairs, ropes, scaffolds and she can frequently balance as well as frequently handle and finger.[50]

In support of the assessment, the ALJ first determined that: "[claimant] is disabled due to: neck pain; chronic low back pain; bilateral CTS; migraine headaches; anxiety; GERD; [and] a vitamin D deficiency;" "her chronic back pain radiates down through her left hip and into her ankle;" "pain and weakness persist despite treatment including physical therapy, exercise, swimming, use of a TENS unit, and medications;" "she is unable to function when on her medications;" "she used to take her Gabapentin, which she says makes her groggy, at bedtime . . . she now only takes ibuprofen for pain."[51]   The ALJ next considered plaintiff's testimony that: "she is unable to rotate her head fully to the left due to the neck condition;" "her arms are numb all the way down to the

---

[48]  Id.

[49]  Id.

[50]  Id. (citing SSRs 83-10, 96-8p).

[51]  Id.

9

thumbs and that she does not [have] feeling in some fingers due to this condition and CTS;" "she

is to undergo surgery on February 3, 2015 to address a left thumb trigger finger and that her CTS

has been treated with an injection."[52]  The ALJ also considered plaintiff's testimony that: "she

has anxiety;" "her migraines produce excruciating pain;" "she attributed a sensation of

weakness" due to a vitamin D deficiency; and she "reported continued GERD symptoms despite

medical therapy including two past surgeries."[53]

After careful consideration of the evidence, the ALJ concluded that "the claimant's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely credible."[54] In assessing the evidence, the ALJ noted

that the "claimant has disc disease:" (1) a July 5, 2012 cervical x-ray showed "stable

[malalignment] (mild anterolisthesis), moderate disc space narrowing, and spurring of C5-6 (Ex.

3F225);"[55] (2) an August 28, 2013 thoracic x-ray showed "a smooth rightward curve within the

thoracolumbar spine centered at the junction without acute abnormality (Ex. 3F160);"[56] (3) "[t]he

claimant also has lumbar spine degenerative disease," and a "December 13, 2012 MRI shows

multilevel degenerative disc disease of the lumbar spine as described, most significant at L4-L5,

with grade 1 anterolisthesis resulting in moderate spinal canal stenosis, moderate right and mild

---

[52]  Id. at 20.

[53]  Id.

[54]  Id.

[55]  Id..

[56]  Id.

left neural foramine narrowing (Ex.3F197, 247);"[57] (4) "on examination, her range of motion is painful and slightly reduced (Ex. 3F197, 247) but claimant's neurological examinations have been normal (Ex. 3F197) except occasional and intermittent findings of some left upper extremity grip and finger weakness (Ex. 3F247);" (5) "she has long reported obtaining relief from a treatment regiment of ibuprofen, swimming, and stretching (Ex. 3F195), and she also made progress in physical therapy prior to the alleged onset date (Ex. 3F135);" and (6) "[t]he claimant worked for many years with these impairments and the record does not document a substantial worsening in her impairments or a decline in her overall functioning at the time of the alleged onset date" and it is unclear why claimant ceased working.[58]

The ALJ considered claimant's November 26, 2013 primary care records and noted that: (1) claimant's "physical examination was normal apart from a Body Mass Index (BMI) of 32.1 in the obese range;" (2) claimant's "neurological examination was nonfocal;" and (3) "although CTS is not noted among her complaints that day, she was prescribed the use of splints at night (Ex. 3F99-102)."[59]  The ALJ noted on December 9, 2013, claimant's left thumb was injected, to alleviate pain thought to be due to De Quervain's tenosynovitis and/or thumb carpometacarpal (CMC) instability.[60]

The ALJ noted on December 10, 2013, claimant "told her physician, Maria Y. Cipriani, M.D., that she needed assistance to cook, clean, do laundry, run errands, get groceries, pay bills,

---

[57] Id.

[58] Id.

[59] Id. at 20-21.

[60] Id. at 21.

11

and drive to appointments."[61]  The ALJ further noted Dr. Cipriani did not "'see a medical reason

for her to require permanent need for regular aid and attendance,'(Ex. 3F79)" and "believed the

claimant needed to be assessed at home by a social worker."[62]  The ALJ noted that on claimant's

February 4, 2014 function report (Ex. 3E), claimant expressly stated she did these activities.[63]

"She also reported doing these activities during a March 10, 2014 consultative examination (Ex.

4F4)."[64]  The ALJ considered Dr. Cipriani's January 29, 2014 records revealing the claimant

"was sent for electromyography after showing decreased sensation in her fingers and decreased

grip in both hands without inflammation," and "instructed to lose weight as her BMI had

increased to 33.7 (Ex. 3F32)."[65]  The ALJ also considered notes from an April 7, 2014 orthopedic

surgery appointment revealing "the electromyography had confirmed the presence of right

sensory and motor median neuropathy with evidence of axonal loss and left sensory, but not

motor, median nerve neuropathy at or about the wrist consistent with carpal tunnel syndrome"

and a "series of injections were planned with a right carpal tunnel release surgery to follow

should those fail to improve claimant's condition."[66]  Further, the ALJ considered an April 30,

2014 cervical spine MRI showing "uncovertebral hypertrophy and disc osteophyte complex

resulting in moderate right and mild left neuroforaminal stenosis without significant spinal canal

---

[61]  Id.

[62]  Id.

[63]  Id.

[64]  Id.

[65]  Id.

[66]  Id.

narrowing at C5-6 and diffuse disc bulge facet arthropathy resulting in mild bilateral neuroformainal stenosis at C6-7 (Ex. 8F3-4)."[67]

The ALJ concluded that "claimant's complaints of severe pain and disabling functional limitations exceed the limited amount and type of findings in evidence and do nor correlate to the intensity or frequency of treatment she has received since the alleged onset date" and "she does not appear to be experiencing the progressive physical and/or mental deterioration that might be expected when there is intense, chronic pain such as that claimed."[68]  The ALJ noted indicators demonstrate that claimant's pain is "not as severe or limiting as she alleges:" (1) "her current sole reliance on the non-narcotic pain medication ibuprofen (which she characterizes as effective);" (2) "lack of surgical treatment for her disc disease and CTS;" and (3) "lack of sustained and significant pain management interventions."[69]  The ALJ further noted the type and quantity of claimant's daily activities, which include driving, cleaning, cooking, shopping, maintaining her social contacts, and swimming, "when considered in combination with the limited amount and type of abnormal clinical findings and the modest amount of conservative care documented in evidence" indicate that claimant's "impairments are not as limited or as painful as alleged and do not prevent her from sustaining light duty activity."[70]

The ALJ noted Dr. Briggs, reading directly from the claimant's November 4, 2014 Department of Veteran Affairs disability rating decision testified the claimant has: (1) lumbar

---

[67] Id.

[68] Id.

[69] Id.

[70] Id.

spinal stenosis with mild incomplete paralysis (Ex. 2F9); (2) right lower extremity sciatic pain

(Ex. 2F3); (3) carpal tunnel syndrome bilaterally (Ex. 6F5); and (4) some element of GERD with

hiatal hernia.[71]  The ALJ further noted Dr. Briggs felt: (1) "claimant could not work on a

consistent basis;" (2) "she should not perform repetitive fine motor movements due to the carpal

tunnel syndrome;" and (3) "it would be difficult for the claimant to follow her doctor's orders to

exercise with weights three times a week (Ex. 7)."[72]

   The ALJ concluded that "no significant weight is given to Dr. Briggs' opinion" because:

(1) "[t]he Department of Veteran Affairs and the Social Security Administration use different

criteria and evaluation processes to determine disability and a finding of disability by one does

not necessarily equate to a finding of disability by the other;" (2) "the Social Security

Administration is not bound by determinations of other agencies and the Administrative Law

Judge must make a decision on disability using only Social Security law. (20 C.F.R. 404.1505);"

(3) "Dr. Briggs did not identify the factual findings he based his opinions on" and "[t]he record

does not contain findings that would corroborate or substantiate the degree of limitation

identified by the medical expert;" and (4) "[t]he VA rating relies heavily on general anxiety

disorder and substance abuse in finding the claimant disabled and places relatively little weight

on the impairments alleged at present as disabling."[73]  The ALJ further noted his review of the

more recent evidence indicates that the claimant's anxiety, GERD, and "a number of other

---

[71]  Id.

[72]  Id.

[73]  Id.

impairments" relied on by the VA rating decision are not "severe or a current treating concern."[74] The ALJ concluded "[i]n sum, Dr. Briggs' opinion is based largely on non-medical evidence, not the clinical findings and longitudinal treatment history documented in the current evidence of record that simply does not support, for Social Security purposes, a finding of disability."[75]

Further, the ALJ considered the claimant's VA disability rating and gave it "little weight (SSR 06-3p):" (1) "A Veterans Administration rating of even total and permanent disability (*i.e.* 100%) is not legally binding on Social Security because the criteria applied by the two agencies is different and the weight given this type of evidence will vary depending on the facts of each case (20 CFR 404.1504; SSR 06-3p);" (2) "the VA rating relies heavily on impairments (anxiety disorder and substance abuse), that the more recent evidence . . . indicates are not severe;" and (3) "the record as a whole reviewed by the undersigned documents a body of clinical findings and treatment history that indicates the claimant is capable of a range of light exertion as set forth above."[76]

The ALJ also considered VA Examination for Housebound Status or Permanent Need For Regular Aid and Attendance ("VA form") completed by Dr. Cipriani on January 29, 2014 and gave it "no significant weight in determining residual functional capacity."[77]   The ALJ noted Dr. Cipriani indicates in the report that: (1) "claimant is unable to prepare her own meals due to loss of dexterity in her hands and difficulties maneuvering the grocery cart/carrying groceries;"

---

[74] Id.

[75] Id.

[76] Id.

[77] Id. at 22-23.

(2) "findings of poor grip and numbness documented in contemporaneous treatment records" but notes "claimant's ability to cook simple meals," feed herself, go out of her home for groceries, and conduct bank and post office business; (3) "claimant is unable to lift weight, sit, stand, or walk for long periods due to pain in hips, back, and knees;" (4) "claimant has disc disease and slow gait but no motor deficits or need for a cane as she mentioned [] she was thinking of using at the hearing (Ex. 6F2-3)."[78]   The ALJ concluded "the evidence does not support Dr. Cipriani's assessment" because "the evidence indicates the claimant has good functional use of her hands and remains functionally independent" as she "shops for groceries, drives, cooks, dresses herself, pays bills, takes care of pets, hands her mechanic boyfriend/husband tools while he works, and looks after her young grandson."[79]   The ALJ also noted that on April 7, 2014, Stephen Moran, M.D., an orthopedist "who was following the claimant for the very hand problems described by Dr. Cipriani and the source of her limitations, completed the [VA form] to indicate that the claimant required no assistance at all," opined that "claimant is capable of preparing her own meals" and "needed only to use the hand braces prescribed for nighttime use (Ex. 6F4-6)."[80]   The ALJ determined "Dr. Moran, having greater expertise and familiarity with the claimant's hand impairment, is entitled to greater weight."[81]

The ALJ also considered the State agency medical consultant's opinions of Mark Boulos,

---

[78]   Id.

[79]   Id.

[80]   Id.

[81]   Id.

16

M.D., Matthew Turner, Ph.D., John Durfor, M.D., and Brian Harper, M.D.[82]  The ALJ determined that "the greatest weight was given to Dr. Harper's opinion in determining the physical limitations in the claimant's residual functional capacity."[83]  The ALJ noted Dr. Harper, "reviewing the record at the time of reconsideration on May 28, 2014, opined the claimant was limited to light exertion with frequent climbing and frequent handling (Ex. 2A6-7)," and the more recent evidence "documenting the claimant's CTS and disc disease is most consistent with Dr. Harper's opinion."[84]

**Step 4 findings**.  The ALJ found plaintiff "capable of performing past relevant work as a salesperson and as an assembler.  This work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity."[85]  The VE testified plaintiff had past relevant work as a salesperson, assembler, shuttle bus driver, and an electrician apprentice.[86]  The VE testified the limitations contained in the claimant's RFC "do not prevent performance of the claimant's past relevant work as a salesperson and as an assembler, [and] the other past work jobs [were] excluded by the exertional limitations in her residual functional capacity."[87]  Accordingly, the ALJ found that plaintiff had not been under a disability, as defined

---

[82]  Id.

[83]  Id.

[84]  Id.

[85]  Id. (citing 20 CFR § 404.1565).

[86]  Id.

[87]  Id. at 24.

by the Social Security Act, November 22, 2013, through the date of her decision,[88] and was "not disabled under sections 216(i) and 223(d) of the Social Security Act."[89]

## B.      Plaintiff's Contentions

On November 19, 2015, plaintiff filed a brief seeking review of the Commissioner's decision and asking the Court to reverse or remand to the Commissioner for further proceedings.[90]  Plaintiff argues "the ALJ failed to provide good/specific/supported reasons for discounting the opinion of the Medical Expert, an opinion plainly consistent with the underlying record."[91]  On December 29, 2015, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by substantial evidence.[92]  On January 12, 2016, plaintiff filed a reply brief.[93]

## VI.  ARGUMENTS and CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in her brief.

## A.      Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive

---

[88] Id. (citing 20 C.F.R. § 404.1520(f)).

[89] Id. at 24.

[90] Docket no. 16.

[91] Id.

[92] Docket no. 18.

[93] Docket no. 19.

disability insurance benefits.[94]  Each aged, blind or disabled individual who meets certain income

and resources limitations is entitled to receive supplemental security income.[95]  The term

"disabled" or "disability" means the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment, which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of not less

than 12 months.[96]  A person shall be determined to be under a disability only if her physical or

mental impairment or impairments are of such severity that she is not only unable to do her

previous work but cannot, considering her age, education, and work experience, engage in any

other kind of substantial gainful work existing in significant numbers in the national economy,

regardless of whether such work exists in the immediate area in which she lives, or whether a

specific job vacancy exists for her, or whether she would be hired if she applied for work.[97]

**B.     Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be

evaluated according to a five-step process.[98]  A finding that a claimant is disabled or not disabled

at any point in the process is conclusive and terminates the Commissioner's analysis.[99]  The first

step involves determining whether the claimant is currently engaged in substantial gainful

---

[94]  42 U.S.C. § 423(a)(1).

[95]  Id. § 1382 (a).

[96]  Id. § 1382c(a)(3)(A).

[97]  Id. § 1382c(a)(3)(B).

[98]  20 C.F.R. §§ 404.1520 and 416.920.

[99]  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

activity.  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, and work experience.  The second step involves determining whether the claimant's impairment is severe.  If it is not severe, the claimant is deemed not disabled.  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, and work experience.  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of her past work.  If she can still do this kind of work, she is not disabled.  If she cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities and her age, education, and work experience, to do other work.  If she cannot do other work, she will be found to be disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[100]  Once she has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that claimant is capable of performing.[101]  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work.[102]

---

[100]  Id.

[101]  Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

[102]  Id. at 632-33.

C.   **Plaintiff's Claim in Appealing the ALJ's Decision: "The ALJ failed to provide good/specific/supported reasons for discounting the opinion of the Medical Expert, [Dr. Briggs], an opinion plainly consistent with the underlying record."**

Plaintiff argues the ALJ failed to provide good/specific/supported reasons for discounting Dr. Briggs' opinion, and presents four main points.  First, plaintiff asserts the ALJ failed to "give any consideration or explanation of why he rejected Dr. Briggs opinion" "in terms of § 404.1527's requirements."[103]  Second, plaintiff argues the "ALJ's assertion that Dr. Briggs did not identify the factual basis for his findings is simply false."[104]  Third, plaintiff asserts the ALJ did not "'fully and fairly' develop the record *for and against* awarding benefits."[105]  Specifically, plaintiff asserts "the ALJ did ask Dr. Briggs one question," and then "abruptly ended her questioning of Dr. Briggs."[106]  Fourth, plaintiff argues Dr. Briggs' opinion is consistent with the November 4, 2013 VA disability rating, Dr. Cipriani's opinion, and medical evidence from Audie Murphy VA Medical.[107]

In response, the Commissioner argues four main points.  First, the Commissioner asserts "Dr. Briggs is a non-examining medical expert, not a treating physician, and thus the ALJ was not required to include a detailed analysis of the factors set forth in *Newton* prior to assigning no significant weight to Dr. Briggs' testimony"[108] and "the ALJ must consider the 1527 factors 'only

---

[103]  Docket no. 16 at 6.

[104]  Id.

[105]  Id. at 7 (emphasis in original).

[106]  Id. at 8.

[107]  Id. at 8-14.

[108]  Docket no. 18 at 7.

with respect to *medical opinions* of treating physicians,' and thus was not required to apply the factors to Dr. Briggs' testimony that Plaintiff could not work on a consistent basis."[109]  Second, the Commissioner argues the ALJ "properly noted that the record did not support the degree of limitation Dr. Briggs identified in his testimony."[110]  Third, the Commissioner asserts the ALJ specifically questioned Dr. Briggs regarding the findings supporting his conclusion."[111]  Fourth, the Commissioner argues the ALJ: (1) "recogniz[ed] that a VA disability determination is not binding on the Commissioner;" (2) "found that the evidence did not support Dr. Cipriani's opinion;" and (3) retains the "responsibility to weigh the evidence" in the record.[112]

In reply, plaintiff argues two main points.  First, plaintiff asserts the ALJ "analyzed [Dr. Briggs'] statements as "'medical opinions.'"[113]  Second, plaintiff argues the Commissioner's "assertion that the ALJ did rely on daily activities to discount Dr. Briggs' medical opinion is [] false" and the Commissioner's "selective description of the record does not support the ALJ's decision []."[114]

To show that the ALJ's decision should be reversed, plaintiff must establish her substantial rights were affected by the ALJ's decision to give less than controlling weight to her

---

[109] Id.

[110] Id. at 4.

[111] Id. at 8.

[112] Id. at 9.

[113] Docket no. 19 at 2.

[114] Id. at 2-3.

treating physician's opinion.[115]  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."[116]  Although plaintiff raises questions about the ALJ's analysis of the specific medical evidence, the issue is whether substantial evidence—that is, more than a scintilla of evidence, less than a preponderance, and such relevant evidence as a reasonable mind might accept as adequate[117]—supports the ALJ's conclusion that plaintiff was not disabled under the regulatory framework when considering all of the evidence, including Dr. Briggs' testimony.

The social security regulations require an ALJ to examine a variety of factors in evaluating medical opinions from non-examining sources.[118]  Among the factors are the non-examining source's medical specialty and expertise in social security, whether opinions are supported by the evidence, the consistency of the opinion with the record as a whole, and the supporting explanations provided by the medical source.[119]  But "'there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings.'"[120]  The regulations merely require the ALJ consider the medical opinion

---

[115]  See Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988).

[116]  Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir. 1991) (citing Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987)).

[117]  Boyd, 239 F.3d at 704 (5th Cir. 2001).

[118]  See 20 C.F.R. § 404.1527(e).

[119]  See id.; SSR 96–6p; Amilpas v. Astrue, No. SA 09 CV 389 XR, 2010 WL 2756552, at *4 (W.D. Tex. July 12, 2010).

[120]  Gonzales-Sargent v. Barnhart, No. SA 06 CA 0355 XR, 2007 WL 1752057, at *8 (W.D. Tex. June 15, 2007) (quoting Hammond v. Barnhart, 124 Fed.Appx. 847, 851 (5th Cir. 2005)).  See

and give appropriate explanations for accepting or rejecting it.[121]  Statements that plaintiff is

"unable to perform any work activity" is not a medical opinion and, thus, has no special

significance.[122]  Further, the ALJ's failure to mention a particular piece of evidence does not

necessarily mean that he failed to consider it.[123]  "'Procedural perfection in administrative

proceedings is not required' as long as 'the substantial rights of a party have not been

affected.'"[124]

        The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his

decision is an informed decision based on sufficient facts.[125]  The decision of an ALJ is not

supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty

to adequately develop the record, and (2) that the claimant was prejudiced.[126]  To establish

prejudice, a claimant must show that she "could and would have adduced evidence that might

have altered the result."[127]

---

Amilpas, 2010 WL 2303302, at *5–*6 (ALJ complies with regulations if resulting decision reflects that consideration was given to testifying medical expert's opinion).

        [121]  See SSR 96–5p ("[a]djudicators must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527 and provide appropriate explanations for accepting or rejecting such opinions").

        [122]  20 C.F.R. § 404.1527(e)(1).  See also Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir.2003) (determination that claimant is "unable to work" is a legal conclusion reserved to the Commissioner).

        [123]  Hammond, 124 F. App'x at 851.

        [124]  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988)).

        [125]  Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984).

        [126]  Id. at 1219-1220.

        [127]  Id. at 1220.

Dr. Briggs was a non-examining, non-treating medical expert who testified at claimant's January 20, 2015 hearing.[128]  Dr. Briggs reviewed the medical evidence of record.[129]  The ALJ accorded "no significant weight" to Dr. Briggs' opinion that "claimant could not work on a consistent basis and that she should not perform repetitive fine motor movements due to the carpal tunnel syndrome."[130]  Confusingly, the ALJ stated both that "Dr. Briggs did not identify the factual findings he based his opinions on"[131] and that "[t]he record does not contain findings that would corroborate or substantiate the degree of limitation identified by the medical expert."[132]  But, the record is clear the ALJ did consider Dr. Briggs' opinions in the relation to the record as a whole.  As the Commissioner noted, the "ALJ specifically asked Dr. Briggs what findings supported his conclusion that Plaintiff would be unable to work on a consistent basis."[133]  Dr. Briggs described claimant's back problem and claimant's doctor's exercise recommendation.[134]  Dr. Briggs cited to the Department of Veterans Affairs disability rating decision, Ex. 2F9, and Dr. Stephen Moran's medical report, Ex. 6F5, during his testimony.[135]

The ALJ incorporated Dr. Briggs' findings into her decision and provided reasons for

---

[128]  TR at 39.

[129]  Id.

[130]  Id. at 21-22.

[131]  Id.

[132]  Id. at 22.

[133]  Docket no. 18 at 8.

[134]  TR at 41.

[135]  Id. at 21.

giving "no significant weight" to Dr. Briggs' opinions.  The ALJ noted Dr. Briggs' opinions are "based largely on non-medical evidence, not the clinical findings and longitudinal treatment history documented in the current evidence of record that simply does not support, for Social Security purposes, a finding of disability."[136]  The ALJ gave "little weight" to the VA disability rating, also cited by Dr. Briggs, noting the different criteria and evaluation processes to determine disability used by the Department of Veterans Affairs and the Social Security Administration.[137] Dr. Briggs' conclusion that claimant is "unable to work on a consistent basis" is not a medical opinion as defined by the social security regulations and is entitled to no special significance by the ALJ.[138]

Plaintiff asserts that Dr. Briggs' opinion is consistent with Dr. Cipriani's opinion and further argues that Dr. Moran's opinion is consistent with Dr. Cipriani's opinion:

> [a]lthough the ALJ cited orthopedist Stephen Moran M.D.'s assessment as being inconsistent with that of Dr. Cipriani, Tr. 23, a careful reading of Dr. Moran's opinion is that he confirmed that Plaintiff has poor grip due to bilateral carpal tunnel syndrome, DeQuervain's, and osteoarthritis, and further that "patient is not able to make simple meals or dress herself."  Tr. 1320.[139]

To the extent plaintiff is arguing that the opinions of Dr. Moran and Dr. Cipriani are consistent and together show the ALJ's non-disability determination is not supported by substantial

---

[136]  Id. at 22.

[137]  Id.

[138]  Frank, 326 F.3d at 620; 20 C.F.R. § 404.1527(d)(1), (3).

[139]  Docket no. 16 at 11.

evidence, the Court disagrees.[140]  A review of Dr. Cipriani's treatment records shows the ALJ's

conclusion that plaintiff is capable of shopping for groceries, cooking, dressing herself[141] is

consistent with Dr. Cipriani's statements that claimant is able to leave the home for groceries,

cook simple meals, and dress herself.[142]

The ALJ's findings are supported by the medical expert, Brian Harper, M.D., who

"opined the claimant was limited to light exertion with frequent climbing and frequent handling

(Ex.3A7-8)."[143]  Dr. Harper reviewed the record on May 28, 2014, and the ALJ noted "the more

recent evidence, documenting the claimant's CTS and disc disease is most consistent with Dr.

Harper's opinion."[144]  The ALJ also considered the opinion of John Durfor, M.D., who "opined

the claimant capable of medium exertion with frequent postural limitations (climbing, balancing)

---

[140] Although plaintiff does not raise the issue, the ALJ's written decision contains two factual errors when addressing Dr. Moran and Dr. Cipriani's opinions.  First, the ALJ stated Dr. Moran's April 7, 2014 VA form recited that "claimant [*is*] capable of preparing her own meals."  TR at 22 (emphasis added).  But, a review of Dr. Moran's April 7, 2014 VA form in the record shows Dr. Moran actually reported that claimant "is *not* able to cook simple meals."  Id. at 1320.  Rather, it is *Dr. Cipriani's* January 29, 2014 VA form that states claimant is "*able* to cook simple, and feed self." Id. at 1318 (emphasis added).  Second, the ALJ stated Dr. Moran indicated "the claimant needed only to use hand braces prescribed for nighttime use (Ex. 6F4-6)."  Id. at 22.  But, Dr. Moran's April 7, 2014 VA form states claimant needed hand braces and did not state the hand braces were limited to nighttime use.  Id. at 1320.  Rather, *Dr. Cipriani* ordered night splints for claimant's CTS.  Id. at 370.  Plaintiff has not argued the errors constitute reversible error.  Despite the errors about which physician said what, there are medical opinions in the record stating plaintiff can prepare her own meals, feed herself, and needs hand braces only at night, consistent with the ALJ's ultimate determinations.

[141] Id. at 23.

[142] Id. at 1318.

[143] Id. at 23.

[144] Id.

27

and handling limitations (Ex. 2A6-7)."[145]  The ALJ accorded "the greatest weight" "to Dr. Harper's opinion in determining the physical limitations in the claimant's residual functional capacity while Dr. Durfor's more distant in time opinion was given lesser weight (SSR 96-6p)."[146]

The ALJ also considered the opinions of the state agency medical consultants, Mark Boulos, M.D. and Matthew Turner, Ph.D who stated that the claimant "does not have a severe mental impairment (Ex. 2A6; Ex. 3A6)," and the ALJ found this statement to be "consistent with the evidence of record."[147]  The ALJ further stated that more recent evidence, "received since the time of the State agency review indicates the claimant is less limited in daily activities and in concentration, persistence and pace than even Drs. Boulos and Turner concluded and the Psychiatric Review Technique Form findings . . . reflect review of the record as a whole."[148]

The ALJ's findings are also supported by the plaintiff's report of her own daily activities. The ALJ considered that "claimant wrote that she [cooked, cleaned, did laundry, ran errands, got groceries, paid bills, and drove to appointments] in her Function Report completed by her hand and signed on February 4, 2013 (Ex. 3E)."[149]  The ALJ also considered that claimant "reported doing these activities during a March 10, 2014 consultative examination (Ex. 4F4)."[150]  The ALJ

---

[145]  Id.

[146]  Id.

[147]  Id.

[148]  Id.

[149]  Id. at 21.

[150]  Id.

properly may consider an individual's daily activities in determining disability.[151]  Based in part

on plaintiff's own report of her daily activities, the ALJ concluded that plaintiff "has good

functional use of her hands and remains functionally independent," as she "shops for groceries,

drives, cooks, dresses herself, pays bills, takes care of her pets, hands her mechanic

boyfriend/husband tools while he works, and looks after her young grandson."[152]

      Contrary to plaintiff's argument, the ALJ was not required to list explicitly all the

evidence she took into account in making her findings.[153]  The ALJ stated she "considered

opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and SSRs 96-2p,

96-5p, 96-6p, and 06-3p."[154]  The ALJ's decision shows she considered the medical opinion and

provided appropriate explanations for giving "no significant weight" to Dr. Briggs' opinion that

"claimant could not work on a consistent basis."[155]  The ALJ referenced the VA report, Dr.

Moran's opinions, and the evidence in the record, but determined to discredit Dr. Briggs'

opinions.  Contrary to plaintiff's arguments, the record reflects the ALJ questioned Dr. Briggs

regarding the bases for his opinion, and allowed claimant, through her attorney, the opportunity

to further develop the record.  Plaintiff has failed to identify specific evidence that would have

been uncovered that would have required the ALJ to alter the final decision, nor is there any basis

---

[151]  <u>Leggett</u>, 67 F.3d at 565 n.12 (citing <u>Reyes v. Sullivan</u>, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam)).

[152]  <u>Id.</u>

[153]  <u>Gonzales-Sargent</u>, 2007 WL 1752057, at *8.

[154]  TR at 19.

[155]  <u>Id.</u> at 21-22.

in this record to conclude that additional medical evidence would have supported plaintiff's claim that she is unable to perform work of any kind.

In sum, the ALJ "has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."[156]  Plaintiff's argument requires the Court re-weigh the evidence in the record, which the Court cannot do.[157]  Rather, this Court will determine only if there is substantial evidence in the record to support the ALJ's finding.[158]  When the record is reviewed as a whole, the Court cannot say there is not substantial evidence to support the ALJ's findings that plaintiff is not disabled.

## VII.  CONCLUSION

Because the ALJ did not commit reversible error and her decision is supported by substantial evidence, plaintiff's request for a ruling reversing the decision of the Commissioner or remand[159] is **DENIED**; the Commissioner's decision is **AFFIRMED**; and the District Clerk is directed to enter judgment accordingly, each side to bear its own costs.

**ORDERED, SIGNED** and **ENTERED** this 8th day of February, 2016.

_Pamela A. Mathy_

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[156]  <u>Muse</u>, 925 F.2d at 790.

[157]  <u>Carey</u>, 230 F.3d at 135.

[158]  <u>Martinez</u>, 64 F.3d 173.

[159]  Docket no. 16.